```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
THOMAS P. ANDERSON,                                              MEMORANDUM
                                                            :    OPINION AND ORDER
                              Plaintiff,
                                                            :    04 Civ. 8180 (SAS)(DFE)
           - against -
                                                            :
SOTHEBY'S INC. SEVERANCE PLAN,
ADMINISTRATOR OF THE SOTHEBY'S                              :
INC. SEVERANCE PLAN, and SOTHEBY'S
HOLDINGS, INC.,
                                                            :
                              Defendants.                   :
------------------------------------------------------------X
```

SHIRA A. SCHEINDLIN, U.S.D.J.:

Defendants have requested a pre-motion conference to discuss their proposed motion to strike the expert report of James F. Reda served by plaintiff on April 14, 2005. Defendants' request can be decided based on the letters submitted by the parties, thereby obviating the need for a pre-motion conference and a formal motion. *See* 5/11/05 Letter from Karen Wahle ("Wahle Let."), attorney for defendants; 5/16/05 Letter from Christine N. Kearns ("Kearns Let."), attorney for plaintiff. For the following reasons, the expert report of James F. Reda is stricken.

I.  FACTS

In his expert report, James F. Reda compares Mr. Anderson's compensation package from Sotheby's International Realty ("SIR"), his employer

of twenty-three years, to the compensation proposal he received from Cendant Corporation ("Cendant") on March 16, 2004. For various reasons, Reda concludes that there are material quantitative and substantive differences in the two compensation packages. Accordingly, in Reda's opinion, the Plan Administrator's determination that the two compensation packages are comparable was not only entirely wrong but the flaws and omissions in its analysis render its determination arbitrary.

## II. DISCUSSION

"[T]he decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause." *DeFelice v. American Int'l Life Assurance Co. of New York*, 112 F.3d 61, 66 (2d Cir. 1997). Much depends on the scope of review (arbitrary and capricious standard or *de novo*) and the intended use of the evidence (plan interpretation or historical fact). Where the scope of review is under the arbitrary and capricious standard, the rules are clear – district courts may only consider the evidence that the fiduciaries themselves considered. *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) ("We follow the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record."). *See also DeVere*

*v. Northrop Grumman Corp.*, No. 97-CV-3324, 1999 WL 182670, at *9 (E.D.N.Y.) ("In reviewing [the claim adminstrator's] decision under the arbitrary and capricious standard, [the court] [is] limited to considering only the administrative record."), *aff'd*, 201 F.3d 431 (2d Cir. 1999).

Where the scope of review is *de novo*, whether evidence outside the administrative record can be considered depends, in part, on the intended use of the evidence. In *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98 (2d Cir. 1991), the Second Circuit distinguished between evidence regarding the proper interpretation of the terms of a plan, which is generally admissible, and evidence intended to establish a particular historical fact as to a claimant, which may or may not be admissible. *See id.* at 104. The court held that a district court may consider evidence outside the administrative record upon a *de novo* review of issues of plan interpretation. *See id.* In doing so, the court stated:

> Consideration of evidence relevant to plan interpretation on de novo review does not implicate the Sixth Circuit's concern that courts would become "substitute plan administrators," particularly since de novo review under the *Firestone* standard presupposes that the administrator's role does not include discretion to interpret the terms of the plan.

*Id.* Accordingly, the court found no error in the use of expert testimony regarding the nature and treatment of temporomandibular joint dysfunction in interpreting

the terms of the plan. *See id.*

In *DeFelice,* the Second Circuit addressed whether a district court may consider evidence outside the administrative record upon a *de novo* review of factual issues. The court held that "upon *de novo* review, even purely factual interpretation cases may provide a district court with good cause to exercise its discretion to admit evidence not available at the administrative level if the administrator was not disinterested." *DeFelice,* 112 F.3d at 66.

Recognizing that several district courts within the Second Circuit have interpreted *DeFelice* as holding that an administrator's dual status as claims reviewer and claims payor is *per se* "good cause" for allowing additional evidence upon a *de novo* review of factual issues, the Second Circuit clarified *DeFelice* in *Locher v. Unum Life Ins. Co. of Am.,* 389 F.3d 288 (2d Cir. 2004). In *Locher,* the court explicitly stated that a "conflict of interest does not *per se* constitute 'good cause' to consider evidence outside of the administrative record upon a *de novo* review of factual issues bearing on an administrator's denial of ERISA benefits." *Id.* at 294. According to the court, "a *per se* rule would effectively eliminate the 'good cause' requirement and the discretion afforded to district courts in deciding whether to admit additional evidence, because claims reviewers and payors are almost always either the same entity or financially connected in some other way."

4

*Id.* at 295. The court noted that in *DeFelice*, "good cause" existed not only because the claims reviewer and claims payor were the same entity, but also because the procedures employed in the determination of claims were flawed. *See id.* Accordingly, the court held "that a conflicted administrator does not *per se* constitute good cause" and cautioned district courts "that a finding of a conflicted administrator alone should not be translated *necessarily* into a finding of good cause." *Id.* at 296 (emphasis in original).

Here, plaintiff seeks to introduce an expert report to help establish an historical fact – the disparity in compensation packages between SIR and Cendant. Because this is an historical fact and does not involve the interpretation of a plan term, *Masella* does not apply. Therefore, two options remain – (1) exclude the evidence if the arbitrary and capricious standard is applicable; and (2) exclude the evidence if the scope of review is *de novo* unless plaintiff can show good cause which, according to *Locher*, cannot be based solely upon a conflict of interest.

It now appears that the arbitrary and capricious standard will govern. *See* Wahle Let. at 1 ("The Sotheby's Inc. Severance Plan granted discretionary authority to the plan administrator to interpret the plan's terms and adjudicate claims. Thus, the Court's role on judicial review will be limited to deciding whether the plan administrator's denial of benefits under the terms of the plan was

arbitrary and capricious."). If the arbitrary and capricious standard applies, the report is excluded under *Miller*. However, if the scope of review is *de novo*, the report may be admissible.

Plaintiff's claim for severance benefits was decided by the Sotheby's Inc. Severance Plan Committee (the "Committee) which is a group of Sotheby's employees designated by the Plan Administrator to decide eligibility for Plan Benefits. *See* May 12, 2005 Opinion and Order of Magistrate Judge Douglas F. Eaton ("Eaton Order") at 2. Plaintiff notes that Judge Eaton found that through the discovery process plaintiff may be able to show that the Committee was influenced by a conflict of interest. *See* Kearns Let. at 2 (citing Eaton Order at 11). Plaintiff also notes that Judge Eaton found that plaintiff may also be able to show, through discovery, that the Committee's procedures for processing claims and appeals were inadequate and did not reasonably assure the receipt of accurate information. *See id.* If plaintiff shows both a conflict of interest and inadequate procedures, the good cause requirement described in *DeFelice* and *Locher* would likely be met.

However, that is not the end of the inquiry. Federal Rule of Evidence 702 states that "*[i]f* scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . ." (emphasis added). Plaintiff is not entitled to a jury in an ERISA case. *See Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003) ("[T]here is no right to a jury trial under ERISA . . . ."). Comparing one compensation package to another generally does not require any particularly specialized knowledge.

I have carefully reviewed the expert report of James F. Reda and I find that it does not contain any of the specialized knowledge contemplated by Rule 702.[1] In his report, Reda criticizes the Plan Administrator's decision to compare the two compensation packages for only a two-year period. Reda then goes on to explain the different bonus calculations under the two packages, noting the remote likelihood that Anderson will be able to achieve the franchise conversion benchmarks required for a 2004 discretionary bonus under the Cendant package. Finally, Reda notes that Anderson's duties at Cendant are qualitatively different that his duties at SIR which, in his opinion, creates a professional set back that may well jeopardize Anderson's tenure at Cendant and his ability to

---

[1] Reda is an expert in the field of executive compensation. Reda has eighteen years of experience in executive compensation consulting. He began his executive compensation consulting career at The Bachelder Group, where he worked nine years. Reda has also worked at Buck Consultants in New York City and Atlanta, Georgia and Hewitt Associates LLC and Andersen LLP in Atlanta.

receive the $800,000 "stay bonus" to be awarded at the end of 2005.[2] Everything that Reda has included in his report, however, will be brought out at trial through lay witnesses. It is highly unlikely that I will need the assistance of an expert in the field of executive compensation to make the appropriate comparisons. In the exercise of my discretion, I find that Reda's proposed testimony should be precluded, regardless of what plaintiff may be able to show through discovery. *See DeFelice*, 112 F.3d at 66.

### III. CONCLUSION

For the foregoing reasons, the expert report of James F. Reda is inadmissible. The conference currently scheduled for July 5, 2005 at 4:30 p.m. is hereby rescheduled for June 29, 2005 at 4:30 p.m.

---

[2] Reda prefaces these comments by stating that he is "not opining on the issue of whether the Administrator's determination that the position, duties, authority and responsibilities allegedly offered by Cendant [were] comparable to those Mr. Anderson held at SIR." Yet these "comments" seem to be his opinion on this subject. Reda's expertise in executive compensation does not qualify him as an expert in job duties – which he appears to recognize. Finally, speculation regarding Anderson's tenure at Cendant is just that – speculation and nothing more.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          June 13, 2005

# - Appearances -

**For Plaintiff:**

Christine N. Kearns, Esq.
Julia E. Judish, Esq.
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000

**For Defendants:**

Matthew J. Watkins, Esq.
Covington & Burling
1330 Avenue of the Americas
New York, New York 10019
(212) 841-1000

Jeffrey Huvelle, Esq.
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-6000