USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/17/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
THOMAS B. ANDERSON,

               Plaintiff,

   - against -

SOTHEBY'S INC. SEVERANCE PLAN,
ADMINISTRATOR OF THE
SOTHEBY'S INC. SEVERANCE PLAN,
and SOTHEBY'S HOLDINGS, INC.,

               Defendants.
------------------------------------------------------X

OPINION AND ORDER

04 Civ. 8180 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

Thomas B. Anderson moves to apply a de novo standard of review to the Sotheby's Inc. Severance Plan Committee's ("Committee") determination denying his claim for severance benefits. Anderson also moves to admit evidence outside of the administrative record under a de novo standard. For the following reasons, Anderson's motion is denied. An arbitrary and capricious standard of review will be applied and evidence outside of the administrative record will not be considered.

## II. BACKGROUND

Plaintiff worked for Sotheby's International Realty, Inc. ("SIR") from

1981 until February 17, 2004, during which he participated in the Sotheby's Inc. Severance Plan (the "Plan"), which is funded by Sotheby's Holdings, Inc. ("Sotheby's").[1] On February 17, 2004, SIR was sold by Sotheby's to NRT Incorporated, a wholly owned subsidiary of Cendant Corporation ("Cendant"). After the sale, plaintiff became an employee of Cendant's Real Estate Franchise Group. He had several meetings with Michael Good, the President of SIR, to discuss his new responsibilities and new compensation package under Cendant.

Plaintiff, through counsel, submitted a benefits claim under the Plan on March 17, 2004, along with a letter stating his intention of terminating his employment with Cendant by March 31, 2004. According to plaintiff, Cendant had not offered him a comparable position with comparable compensation. His claim for benefits under the Severance Plan was referred to the Committee for review.

All Committee members were employees of Sotheby's who were designated by the Plan Administrator to decide any questions regarding eligibility for Plan benefits, including interpreting and construing Plan provisions. Susan

---

[1] The following facts are drawn from the Court's first Opinion in this case, familiarity with which is presumed. *See generally Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180, 2005 U.S. Dist. LEXIS 9033 (S.D.N.Y. May 13, 2005).

Alexander was the Chair of the Committee, as well as Sotheby's Executive Vice-President for Human Resources. On April 12, 2004, Karen Wahle, outside counsel to the Plan Administrator, sent a written invitation to plaintiff to submit a statement supporting his claim. In response, plaintiff submitted a letter and declaration on May 10, 2004. On July 6 and 7, 2004, Alexander and Wahle conducted interviews of Cendant employees with respect to Anderson's claim and took notes during those interviews. On July 16, 2004, the Committee denied the claim, and plaintiff appealed on July 20, 2004. On September 20, 2004, the Committee, acting on behalf of the Plan Administrator, denied the appeal. Plaintiff then filed the instant Complaint on October 18, 2004. Defendants provided documents to plaintiff in March 2005, but withheld Interview Notes, asserting work product and attorney-client privilege. Magistrate Judge Douglas F. Eaton directed defendants to produce the withheld documents.

Plaintiff now asserts that a de novo standard of review should be applied to the Plan Administrator's determination of his benefits claim. He argues that the Plan Administrator had an actual conflict of interest that in fact influenced the Plan Administrator's determination. Plaintiff further maintains that the Plan Administrator intentionally destroyed evidence and, as such, he is entitled to an adverse inference regarding the existence of an actual conflict of interest in the

Plan Administrator's deliberations. Lastly, plaintiff argues that evidence outside of the administrative record should be admissible under a de novo standard of review. Defendants deny each of these contentions, and argue that the Court should apply an arbitrary and capricious standard of review.

## III. LEGAL STANDARD

### A. Standard of Review

The Supreme Court has held that principles of trust law "establish that a denial of benefits challenged under section 1132(a)(1)(B) must be reviewed under a *de novo* standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which cases a deferential standard of review is appropriate."[2] "Where discretionary authority is afforded an ERISA-regulated plan administrator . . . denial of plan benefits is generally reviewed under an 'arbitrary and capricious' standard of review."[3]

In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court stated that courts should apply the arbitrary and capricious standard of review where

---

[2] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1989).

[3] *Wagner v. First UNUM Life Ins. Co.*, No. 02 Civ. 9135, 2003 WL 21960997, at *4 (S.D.N.Y. Aug. 13, 2003) (citing *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89 (2d Cir. 2000)).

appropriate "regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest."[4] According to the Supreme Court, the "conflict must be weighed as a factor in determining whether there is an abuse of discretion."[5] In *Pagan v. NYNEX Pension Plan*, the Second Circuit held that the arbitrary and capricious standard must be applied where the plan provides the administrator with discretionary authority.[6] The court enunciated this standard of review regardless of whether the administrator was operating under a conflict of interest.[7] In applying the arbitrary and capricious standard, the court stated that it must defer to a benefits committee's interpretation of a pension plan where such an interpretation is reasonable.[8] The court specifically noted that the arbitrary and capricious standard would apply notwithstanding the plaintiff's assertion that a conflict of interest existed, because the plaintiff failed to demonstrate how the alleged conflict affected the reasonableness of the benefits committee's

---

[4] *Firestone,* 489 U.S. at 115.

[5] *Id.* (citing Restatement (Second) of Trusts § 187 cmt. d (1959) (current version at Restatement (Third) of Trusts § 187 cmt. d (2005))). *Accord Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir. 1995).

[6] *See Pagan,* 52 F.3d at 441.

[7] *See id.*

[8] *See id.* at 443.

determination.[9] In *Sullivan v. LTV Aerospace and Defense Company*, the Second Circuit set forth a two-part test for determining whether an administrator's determination was arbitrary and capricious where the administrator is shown to have a conflict of interest.[10] The two relevant inquiries are: "First, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; second, whether the evidence shows that the administrator was in fact influenced by such conflict."[11] The plaintiff has the burden of proving that the conflict of interest in fact influenced the administrator's determination.[12] If a plaintiff can satisfy this burden, a de novo standard of review is applied.[13] If a plaintiff cannot satisfy this burden, then the conflict of interest becomes an additional factor in determining whether the challenged determination was arbitrary or capricious.[14]

"A conflict of interest may be found where there is an unfunded plan

---

[9] *See id.*

[10] 82 F.3d 1251, 1255 (2d Cir. 1996).

[11] *Id.*

[12] *See id.* at 1259.

[13] *See Owen v. Wade Lupe Constr. Co.*, 325 F. Supp. 2d 146, 152 (N.D.N.Y. 2004) (citing *Sullivan*, 82 F.3d at 1255).

[14] *See id.* (citing *Pulvers*, 210 F.3d at 92).

and the administrator is also an employee of the sponsoring company . . . in such a situation, the administrator has conflicting fiduciary duties to the plan sponsor, his employer, and the participants as plan beneficiaries."[15] Nonetheless, "the requirement that a plaintiff show actual influence of conflict on the administrator's decision makes it exceedingly hard, if not impossible, for plaintiffs to obtain de novo review on the basis of conflict."[16] For example, a court still applied the arbitrary and capricious standard where the administrator's determination involved "the possibility of exercising discretion in favor of one portion of the group to whom he may feel more loyal and, indeed, a greater need to keep content, given that this portion works for him while the other does not."[17]

Two courts recently found that plaintiffs had demonstrated that there was a factual question as to whether the administrator was influenced by an actual conflict of interest. In *Sullivan v. LTV Aerospace and Defense Company*, the court found that the administrator may have acted under an actual conflict of interest because of the committee members' potential desire to cut costs for the Company,

---

[15] *Sullivan,* 82 F.3d at 1256 (citing *Firestone,* 489 U.S. at 12).

[16] *Cook v. New York Times Co. Long-Term Disability Plan*, No. 02 Civ. 9154, 2004 WL 203111, at *3 n.3 (S.D.N.Y. Jan. 30, 2004). *Accord Owen*, 325 F. Supp. 2d at 152.

[17] *Owen*, 325 F. Supp. 2d at 153.

which was in severe financial distress.[18] The court also noted that the "Senior Vice President of Human Resources had a significant, and perhaps improper, role in determining who was actually eligible for . . . benefits."[19] Similarly, in *Suozzo v. Bergreen*, the court found there was a possible conflict of interest that affected the committee's decision. The court based its finding on the plaintiff's allegation that the committee denied his claim for benefits shortly after he and the manager of the committee had engaged in a bitter dispute leading to the plaintiff's termination.[20]

### B. Adverse Inference

Three facts must be established by a party seeking an adverse inference instruction based on the spoliation of evidence:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.[21]

---

[18] *See Sullivan*, 82 F.3d at 1257.

[19] *Id.*

[20] *Suozzo v. Bergreen*, No. 00 Civ. 9649, 2002 WL 1402316, at *6 (S.D.N.Y. June 27, 2002).

[21] *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 220 (S.D.N.Y. 2003) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99,

A duty to preserve evidence arises when the party in possession of the evidence is notified of its relevance.[22] A party is on notice once it receives a discovery request or the complaint alerts the party that certain information will likely be sought in discovery.[23] However, "the obligation to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced."[24]

The Second Circuit has determined that "a 'culpable state of mind' for purposes of spoliation is demonstrated "by a showing that the evidence was destroyed knowingly, even without intent to [breach a duty to preserve it], or negligently."[25] When evidence is destroyed or rendered unavailable in bad faith or through gross negligence, this fact alone is sufficient to satisfy the relevance requirement.[26] When evidence is destroyed negligently, "it cannot be inferred . . .

---

107 (2d Cir. 2002)).

[22]  *See Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991).

[23]  *See id.*

[24]  *Turner*, 142 F.R.D. at 73.

[25]  *Residential Funding Corp.*, 306 F.3d at 108.

[26]  *See id.* at 109; *see also Zubulake*, 220 F.R.D. at 220.

that the evidence would have been harmful to [the plaintiff]"[27] and hence the plaintiff must prove relevance.[28]

## IV. DISCUSSION

### A. Conflict of Interest

It is undisputed that the Plan grants discretionary authority to the Administrator.[29] Therefore, an arbitrary and capricious standard of review will apply unless plaintiff can prove that there is an actual conflict of interest that in fact influenced the Administrator's determination. Anderson has demonstrated the likelihood of an actual conflict of interest – the Plan is unfunded and the members of the Committee serving as the Administrator are all employees of the sponsoring Company.

However, as noted earlier, the existence of a conflict of interest alone is insufficient to trigger de novo review; the plaintiff must also demonstrate that the conflict in fact influenced the administrator's determination.[30] Plaintiff has

---

[27] *Turner,* 142 F.R.D. at 78.

[28] *See Zubulake,* 220 F.R.D. at 220.

[29] *See* Plan at § 6.2.

[30] *See* 8/12/05 Defendant's Opposition to Plaintiff's Motion to Apply a De Novo Standard of Review ("Def. Opp.") at 6.

provided no evidence that the Committee members who denied his benefits claim were motivated either by financial concerns or by any hostility toward him. Plaintiff argues that an improper financial motivation is evident because the Plan Sponsor sought indemnification from Cendant.[31] But Susan Alexander, Chair of the Committee, testified that the Committee members did not consider the source of funding for the benefits payments when making their determination.[32] Plaintiff has adduced no evidence that would permit this Court to discredit that testimony. Plaintiff also contends that the Administrator delegated its fiduciary functions to Karen Wahle, Sotheby's outside counsel.[33] However, Wahle testified that she had no previous connection with Sotheby's,[34] she was retained to assist the Committee in performing its fiduciary duties,[35] and she did not vote on plaintiff's claim.[36] Thus, Wahle's position as counsel to the Administrator does nothing to prove that

---

[31] *See* 8/23/05 Plaintiff's Reply in Support of Motion to Apply a De Novo Standard of Review ("Pl. Reply") at 5.

[32] *See* 6/14/05 Deposition of Susan Slavich Alexander at 97.

[33] *See* Pl. Reply at 7.

[34] *See* 5/27/05 Deposition of Karen Mary Wahle ("Wahle Dep.") at 16-17.

[35] *See id.*

[36] *See* Wahle Dep. at 181.

the Committee was in fact influenced by a conflict of interest. In short, plaintiff has failed to demonstrate that any alleged conflict of interest in fact influenced the Administrator's decision.

### B. Adverse Inference Based on Spoliation of Evidence

Plaintiff next argues that he is entitled to an adverse inference instruction permitting the Court to find that the Administrator was in fact influenced by a conflict of interest based on the alleged spoliation of evidence. This evidence consists of Interview Notes taken during Committee meetings at which Anderson's claim was discussed.[37]

### 1. Duty to Preserve

Plaintiff asserts that the duty to preserve evidence arose as of July 6, 2004, the date the Interview Notes were written, because the Administrator claimed that those Notes were entitled to protection as work product. The work product doctrine provides protection for "documents . . . prepared in *anticipation of litigation* . . . ."[38] The Administrator contends that it cannot have reasonably anticipated litigation as of July 6, 2004. Furthermore, Magistrate Judge Eaton

---

[37] *See* Plaintiff's Memorandum in Support of Motion to Apply a De Novo Standard of Review at 15-16.

[38] Fed. R. Civ. P. 26(b)(3) (emphasis added).

-12-

found that the Notes were not entitled to work product protection because they were prepared by the Administrator "in the ordinary course of assessing an employee's beneficiary's claim for a large severance benefit."[39] Nonetheless, because the Administrator claimed that it reasonably anticipated litigation as of July 6, 2004, the Administrator's duty to preserve the documents arose as of that date.

### 2. Culpable State of Mind

There is insufficient evidence here to establish that the Administrator intentionally destroyed notes of the Committee meetings to prevent plaintiff from obtaining them. Plaintiff alleges that Alean Timm, Committee Secretary, intentionally destroyed the notes she took at Committee meetings during which Anderson's claim was discussed.[40] Timm testified that she routinely destroyed her handwritten meeting notes after she prepared a typewritten report. She asserts that she followed this routine practice with regard to the notes she took at the meetings during which Anderson's claim for severance benefits was discussed.[41] Plaintiff further asserts that Wahle was grossly negligent in losing her notes of these

---

[39] *Anderson*, 2005 U.S. Dist. LEXIS 9033, at *23.

[40] *See* Pl. Reply at 10.

[41] *See* 6/14/05 Deposition of Alean N. Timm ("Timm Dep.") at 8-9.

-13-

meetings. According to the testimony provided by Wahle, however, she was unsure whether she had even taken notes at these meetings.[42] As a result, plaintiff cannot demonstrate that any evidence was destroyed in bad faith or through gross negligence. However, the Notes were negligently destroyed as a duty to preserve existed at the time the Notes were lost.

### 3. Relevance

Plaintiff has offered no evidence that the handwritten notes would have shown a conflict of interest that in fact influenced the Administrator's determination. Rather, he contends that relevance ought to be presumed due to the Administrator's intentional destruction of documents.[43] Because I have already found that the destruction of evidence was not done willfully, plaintiff has failed to show relevance and is not entitled to an adverse inference instruction.

### C. Admissibility of Evidence

"Where the scope of review is under the arbitrary and capricious standard, the rules are clear – district courts may only consider the evidence that

---

[42] *See* Wahle Dep. at 208.

[43] *See* Pl. Reply at 10.

the fiduciaries themselves considered."[44] Thus, the only evidence I can consider is that contained in the administrative record.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion to apply a de novo standard of review is denied. The Clerk of the Court is directed to close this motion [Docket #33]. A conference is scheduled for October 28, 2005 at 4:30 pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
        October 11, 2005

---

[44] *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180, 2005 WL 1412965, at *1 (S.D.N.Y. June 13, 2005). *Accord Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).

## - Appearances -

**For Plaintiff:**

Christine N. Kearns, Esq.
Julia E. Judish, Esq.
PILLSBURY WINTHROP SHAW PITTMAN
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000

**For Defendants:**

Jeffrey G. Huvelle, Esq.
Matthew J. Watkins, Esq.
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20044-2401
(202) 662-5526
(202) 778-5526