```
                                            USDC SDNY
                                            DOCUMENT
UNITED STATES DISTRICT COURT                ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK               DOC #: _____
                                            DATE FILED: 9/11/06
------------------------------------------X
                                     :

THOMAS P. ANDERSON,
                                     :      OPINION AND ORDER
               Plaintiff,
                                     :      04 Civ. 8180 (SAS)
     - against -
                                     :
SOTHEBY'S, INC., SEVERANCE PLAN,
ADMINISTRATOR OF THE SOTHEBY'S,      :
INC. SEVERANCE PLAN, and SOTHEBY'S
HOLDINGS, INC.,                      :

               Defendants.           :
-----------------------------------------X
```

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

In an Opinion and Order dated June 22, 2006 (the "Opinion"), I granted plaintiff's motion for summary judgment with respect to his claim for severance benefits under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*[1] I also granted partial summary judgment in defendants' favor and denied plaintiff's bonus claim.[2] The Opinion, however, did not address the issues of prejudgment interest and attorney's fees and costs.

---

[1]    *See Anderson v. Sotheby's, Inc.*, No. 04 Civ. 8180, 2006 WL 1722576, at *20 (S.D.N.Y. June 22, 2006) ("The Plan Administrator is directed to calculate the amount of [severance] benefits and pay them to Anderson forthwith.").

[2]    *See id.* ("Summary judgment is granted in defendants' favor with regard to Anderson's bonus claim.").

Plaintiff has therefore moved for reconsideration of his claim for prejudgment

interest under ERISA. Plaintiff has also moved under Federal Rule of Civil

Procedure 54(d) for attorney's fees in the amount of $292,037.00[3] and costs

totaling $29,123.14.[4] Finally, plaintiff also submitted a Bill of Costs under 28

U.S.C. § 1920 in the amount of $2,950.61. For the following reasons, plaintiff's

motion for reconsideration regarding prejudgment interest is granted, the expenses

sought in his Bill of Costs are approved, and his motion for attorney's fees and

costs is granted, but in a reduced amount.

## II.    LEGAL STANDARDS

### A.    Prejudgment Interest

"In a suit to enforce a right under ERISA, the question of whether or

not to award prejudgment interest is ordinarily left to the discretion of the district

court."[5] In exercising that discretion, "the court is to take into consideration '(i)

---

[3]    Between September 20, 2004 and June 30, 2006, plaintiff incurred
$375,268.50 in attorney's fees, of which $83,231.50 related to issues as to which
plaintiff did not prevail. Thus, the net amount of recoverable fees is $292,037.00.
*See* Declaration of Julia E. Judish in Support of Plaintiff's Motion for Attorney's
Fees ("Judish Decl.") ¶¶ 2-3.

[4]    Although total recoverable costs amount to $32,073.75, this figure includes
deposition expenses of $2,514.55 and copying expenses of $436.06, which are
listed in plaintiff's Bill of Costs and must therefore be deducted.

[5]    *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000).

the need to fully compensate the wronged party for actual damages suffered, (ii)

considerations of fairness and the relative equities of the award, (iii) the remedial

purpose of the statute involved, and/or (iv) such other general principles as are

deemed relevant by the court.'"[6] Prejudgment interest should be awarded to make

plaintiffs whole without overcompensating them.[7]

## B.    Attorney's Fees and Costs

District courts have the discretion to award attorney's fees and costs

in ERISA actions.[8] Moreover, district courts have the discretion to "independently

review and assess the reasonableness of the claimed rates as well as hours

worked."[9] A fee award is appropriate where, as here, a plaintiff is only partially

---

[6]    *Id.* at 139 (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d
Cir. 1996)).

[7]    *See Commercial Union Assurance Co. v. Milken*, 17 F.3d 608, 614 (2d Cir.
1994) ("In deciding whether an award of prejudgment interest is warranted, it must
be remembered that this is an equitable remedy and courts must be careful that an
award does not overcompensate a plaintiff.").

[8]    *See* 29 U.S.C. § 1132(g)(1) ("In any action under this subchapter . . . by a
participant, beneficiary, or fiduciary, the court in its discretion may allow a
reasonable attorney's fee and costs of action to either party.").

[9]    *Gatti v. Community Action Agency of Greene County, Inc.*, 263 F. Supp. 2d
496, 518 (N.D.N.Y. 2003), *aff'd*, 2004 WL 234877, at *2 (2d Cir. Feb. 9, 2004)
(unpublished).

3

successful.[10] In considering whether an award of fees and costs is appropriate, the

following factors are relevant:

> (1) the degree of the offending party's culpability or bad
> faith, (2) the ability of the offending party to satisfy an
> award of attorney's fees, (3) whether an award of fees
> would deter other persons from acting similarly under like
> circumstances, (4) the relative merits of the parties'
> positions, and (5) whether the action conferred a common
> benefit on a group of pension plan participants.[11]

This "standard is designed to further ERISA's essential remedial purpose of

protecting the beneficiaries of employee benefit plans."[12] Furthermore, no single

factor is dispositive and a plaintiff need not satisfy all of the factors in order to

recover attorney's fees and costs.[13]

---

[10] *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."); *Sansevera v. E.I. DuPont de Nemours & Co., Inc.*, 859 F. Supp. 106, 117 (S.D.N.Y. 1994) (granting attorney's fees to plaintiff who won partial summary judgment as to claim that Plan Board acted arbitrarily and capriciously in denying benefits).

[11] *Krizek v. Cigna Group Ins.*, 345 F.3d 91, 102 (2d Cir. 2003) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987)).

[12] *Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 209 (2d Cir. 2003).

[13] *See Zervos v. Verizon N.Y., Inc.* No. 01 Civ. 685, 2002 WL 31553484, at *2 (S.D.N.Y. Nov. 13, 2002).

4

Once it has been determined that an award of fees and costs is appropriate, the next step is to determine the amount of the award. Under the lodestar analysis, the estimated fee is determined by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rates for the attorneys who worked on the case.[14] In determining a reasonable hourly rate, courts should consider the rates for legal services "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"[15] Courts should reduce the lodestar amount by any amount of time deemed unreasonable, unnecessary or unrecoverable.[16]

## III. DISCUSSION

### A. Prejudgment Interest

Defendants do not argue that an award of prejudgment interest is inappropriate. Rather, they object to the interest rate proposed by plaintiff and the

---

[14] *See Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

[15] *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

[16] *See Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) ("In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims.") (citing *Hensley*, 461 U.S. at 434).

manner in which he suggests interest should be calculated. With regard to the rate,

the parties have, in effect, agreed upon the appropriate interest rate. In their

opposition papers, defendants argue that "[t]he rate of interest to which Anderson

is entitled under [28 U.S.C.] § 1961 may not exceed 3.22%."[17] To avoid further

litigation and expense, plaintiff agreed to accept that rate.[18]

        As for the calculation, defendants object to applying the interest rate

to a lump sum from February 17, 2004, the date of plaintiff's termination,

onward.[19] Pursuant to the Severance Plan, Anderson is entitled to receive twenty-

four months of benefits.[20] Defendants contend that according to the Plan,

severance payments are payable on a semi-monthly basis.[21] "Thus, had he been

---

[17] Defendants' Opposition to Plaintiff's Motion for Reconsideration ("Def. Rec. Opp.") at 3.

[18] *See* Plaintiff's Reply in Support of His Motion For Reconsideration of Claim For Prejudgment Interest ("Pl. Reply") at 1.

[19] *See* Def. Rec. Opp. at 3-4 ("Anderson appears to request prejudgment interest calculated as though he had received his severance in a lump sum on February 17, 2004. Such an award would result in a windfall because, under the Severance Plan, Anderson would not have received his entire severance benefit in a single lump sum.").

[20] *See id.* at 4.

[21] *See id.* (Article 4.4 of the Severance Plan provides that an employee's severance benefits "shall be payable on a semi-monthly basis in accordance with the Company's payroll practice.").

6

awarded severance benefits as of February 17, 2004, Anderson would have received his benefit in a series of 48 semi-monthly installments," from February 17, 2004 through February 2006.[22] In response, plaintiff points out that the Plan also provides for a lump sum payment option but he also acknowledges that no payment option was chosen.[23] Given that severance benefits are generally payable on a semi-monthly basis, I will accept defendants' suggestion to accrue interest as if plaintiff were paid his benefits in semi-monthly installments rather than in a lump sum. Finally, defendants object to the accrual of any interest between February 17, 2004 and March 31, 2004, his last day of employment with Cendant.[24] However, in calculating the amount of interest, defendants previously assumed that "Anderson received his first severance payment on February 17, 2004."[25] In any event, the amount of interest for the period in issue is de minimus. Accordingly, prejudgment interest shall be calculated from February 17, 2004 through June 22, 2006, by applying 3.22% to a principal that accumulates with each semi-monthly payment starting February 17, 2004 and continuing through

---

[22] *Id.* at 4-5.

[23] *See* Pl. Reply at 1.

[24] *See* Def. Rec. Opp. at 5.

[25] *Id.* at 4-5.

7

February 2006.[26]

## B.   Attorney's Fees and Costs

### 1.   An Award of Attorney's Fees Is Appropriate

Initially, plaintiff submitted a declaration from one of his attorneys in support of his motion for attorney's fees and costs.[27]  He did not, however, submit contemporaneous billing records.[28]  In the declaration submitted, Anderson's attorney states that she reviewed the detailed bills in order to identify fees related to: (1) Anderson's unsuccessful bonus claim;[29] (2) amendment of the Complaint and defendants' successful motion to dismiss Count VI of the First Amended Complaint; and (3) defendants' successful motion to strike plaintiff's expert witness report.[30]  The fees related to these matters, which are not recoverable, total $83,231.50, leaving $292,037.00 in potentially recoverable fees.[31]  Similarly, the

---

[26]   From February 2006 through June 22, 2006, interest will accrue on the total amount of severance benefits owed plaintiff.

[27]   *See* Motion for Attorney's Fees at 5-6 (referencing the Judish Decl.).

[28]   *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) ("These records should specify, for each attorney, the date, the hours expended, and the nature of the work done.").

[29]   *See* First Amended Complaint, Counts III-V.

[30]   *See* Judish Decl. ¶ 3.

[31]   *See id.*

8

costs related to these matters, which total $9,859.00, were excluded from total costs of $41,932.75, leaving $32,073.75 in recoverable costs.[32]

        In his reply papers, Anderson submitted contemporaneous time records, thereby curing defendants' first objection to his fee request.[33]  However, defendants also argue that plaintiff is not entitled to *any* fee award under the *Chambless* factors.[34]  Although defendants concede that the second and fourth *Chambless* factors have been met, they claim that the remaining three factors are either neutral or tilt in their favor.[35]  As for the first factor – the degree of the offending party's culpability or bad faith – defendants argue that more than a mere denial of benefits by a plan administrator is needed.[36]  However, there was more than a mere denial at play here.  Defendants fail to recognize their culpable conduct in failing to turn over the notes of interviews taken of certain employees.

---

[32]  *See id.* ¶ 4.

[33]  *See* Ex. A of the Supplemental Declaration of Julia E. Judish in Support of Plaintiff's Reply in Support of His Motion for Attorney's Fees ("Judish Supp. Decl."), dated August 8, 2006.

[34]  *See* Defendants' Opposition to Plaintiff's Motion For Attorney's Fees ("Def. Fee Opp.") at 3-5.

[35]  *See id.* at 3.

[36]  *See id.* at 4.

9

During the course of the litigation, a discovery dispute arose which I referred to Magistrate Judge Douglas F. Eaton for disposition. Specifically, plaintiff claimed that defendants wrongfully withheld notes and summaries of interviews taken of certain Cendant employees ("Interview Notes").[37] Defendants withheld these documents claiming they were protected by work-product privilege.[38] In determining whether the Interview Notes were discoverable, Judge Eaton first addressed whether they should be treated as part of the administrative record.[39] Although Judge Eaton assumed, *arguendo*, that the Interview Notes fell outside of the administrative record, he noted the following:

> Plaintiff also states that Ms. Wahle promised to produce the Interview Notes in August 2004 as part of [the administrative] record. She has offered no explanation for the change of heart. Defendants have not rebutted these statements. Moreover, if courts were to permit documents such as the Interview Notes to remain outside the administrative record, then plan administrators would have an incentive to direct investigators to report everything to them orally, thus sparing themselves a potentially messy record.[40]

---

[37]  *See* Opinion and Order of Magistrate Judge Douglas F. Eaton, signed May 13, 2005 ("Eaton Order") at 3.

[38]  *See id.*

[39]  *See id.* at 4.

[40]  *Id.* at 5 (internal quotation marks and citation omitted, brackets in original).

Judge Eaton then analyzed whether plaintiff satisfied a limited good

cause requirement warranting the taking of discovery outside the administrative

record.[41]   After reviewing "Plaintiff's Good Cause Grounds," Judge Eaton ruled

that "[w]ith discovery, there is a reasonable chance that Plaintiff could show that

Defendants' procedures for decisions and appeals were inadequate and did not

reasonably assure that the Committee was receiving accurate information."[42]

Finally, Judge Eaton rejected the applicability of the work-product doctrine to the

Interview Notes in issue, stating as follows:

> All of the Withheld Documents appear to be documents
> that Defendants would have created in the ordinary course
> of assessing an employee's beneficiary's claim for a large
> severance benefit. They would have investigated the claim
> by conducting interviews to see whether the claimant's
> new responsibilities and new compensation were
> comparable to those at his old job.
>
> . . .
>
> As Plaintiff points out, if the work-product doctrine
> protected these documents, no ERISA plan beneficiary

---

[41]   *See id.* at 9 ("I rule that Plaintiff need not make the thorough showing of good cause that he must make later before Judge Scheindlin. However, he must show a reasonable chance that the requested discovery will satisfy the good cause requirement. Otherwise, he could indulge in fishing expeditions by summarily stating that any requested discovery might help to show good cause.").

[42]   *Id.* at 11 ("It is also undisputed that Ms. Wahle once agreed to supply the Interview Notes to Plaintiff, yet they remain outside the record and the denial letter included only a minimal written summary of the interviews of the Cendant employees.").

> could ever obtain discovery into records of an
> Administrator's investigations of the claim because an
> administrator could almost always claim that it anticipated
> possible litigation.[43]

Given the bad faith conduct on the part of defendants, as described in

the Eaton Order, I held that "[t]he Committee's egregious conduct in withholding

such documents supports the conclusion that the Administrator's decision denying

benefits was arbitrary and capricious and must be overturned."[44] In light of this

holding, the first *Chambless* factor is clearly satisfied.[45]

The third *Chambless* factor "looks to whether an award would deter

others from engaging in similar behavior."[46] Defendants point out that "Anderson

present[ed] no evidence that a similar factual dispute over ERISA severance

---

[43]  *Id.* at 13 (internal quotation marks and citation omitted).

[44]  *Anderson*, 2006 WL 1722576, at *20.

[45]  *See Salavaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000) (finding a
defendant to be culpable under *Chambless* where it "violated ERISA, thereby
depriving plaintiffs of rights . . . and violating a Congressional mandate") (internal
quotation marks and citation omitted); *Palmiotti v. Metropolitan Life Ins. Co.*, No.
04 Civ. 718, 2006 WL 1637083, at *1 (S.D.N.Y. June 9, 2006) ("An arbitrary and
capricious determination by an administrator or a failure to conduct a full and fair
review in connection with a plaintiff's claim for benefits satisfies the culpability
factor.").

[46]  *Zervos*, 2002 WL 3155384, at *3 (internal quotation marks and citation
omitted).

12

eligibility will again arise."[47] This argument, however, misses the point. The deterrence factor is not meant to deter plan administrators from repeating specific, wrongful conduct when faced with a similar set of factual circumstances. Rather, it is to deter plan administrators from engaging in generically culpable conduct.[48] Here, a fee award has important deterrent value in preventing other plan administrators from "cherry picking" evidence in order to deny claims and engaging in "egregious conduct" by withholding evidence from claimants. Without an award of attorney's fees, defendants would have little incentive to comply with ERISA as any judicially-determined liability would be limited to what Sotheby's should have paid in the first place. Thus, a fee award serves to deter defendants and other employers from wilfully violating ERISA's regulations in the future. Finally, the fifth factor is neutral as the plan in issue is a severance plan, not a pension plan. In sum, plaintiff has met four of the five *Chambless* factors and the remaining factor is neutral. Plaintiff is therefore entitled to a fee award under *Chambless*.

---

[47] Def. Fee Opp. at 4.

[48] *See Sansevera*, 859 F. Supp. at 117 ("An award of attorney's fees and costs in necessary . . . to deter other employers from similarly denying an applicant a fair consideration of his or her claim.").

13

## 2. The Amount of the Fee Award

The next question is the amount of the fee award. In his Reply,

plaintiff seeks revised attorney's fees in the amount of $299,134.00,[49] $32,073.75

in costs, and $9,956.75[50] in court reporter fees.[51] Because I gave plaintiff the

opportunity to provide contemporaneous time records from his attorneys in his

Reply,[52] defendants were permitted to submit a surreply after reviewing those

records.[53] In their Surreply, defendants object to specific charges included in the

---

[49]   Since June 30, 2006, plaintiff incurred an additional $11,703.50 in attorney's fees, of which $4,605.50 relate to his fee application. *Compare* Judish Supp. Decl. ¶¶ 2-3 *with* Judish Decl. ¶ 3. When the difference of $7,098 ($11,703.50 - $4,605.50) is added to plaintiff's original fee request of $292,037.00, the result is $299,135.00, not $299,134.00 as indicated by plaintiff.

[50]   This amount is not recoverable because it is already included in the $32,073.75 previously requested for costs. *See* Judish Supp. Decl. ¶ 5 ("In addition, Mr. Anderson incurred $31,976.00 in disbursements . . . plus $9,956.75 in court reporter costs, for a total of $41,932.75. Excluding from the cost figure the expert witness fee and costs related to the three matters in which Defendants prevailed . . . reduces Mr. Anderson's costs and expenses by $9,859.00, leaving $32,073.75 in recoverable costs and expenses.") (emphasis in original).

[51]   *See* Plaintiff's Reply in Support of Motion For Attorney's Fees ("Reply") at 10.

[52]   *See Lewis v. Coughlin*, 801 F.2d 570, 572 (2d Cir. 1986) (affirming an award of attorney's fees to the prevailing party despite the belated filing of contemporaneous time records).

[53]   *See* Defendants' Surreply in Opposition to Plaintiff's Motion For Attorney's Fees ("Surreply").

14

time records submitted by plaintiff's counsel. For instance, defendants note that a number of entries in the billing records make specific reference to Count VI of the First Amended Complaint, the claim for penalties under section 502(c) of ERISA.[54] Because I dismissed Count VI, Anderson should not recover fees associated with this unsuccessful claim. Defendants have tabulated 23.70 hours of unredacted entries describing work related to plaintiff's section 502(c) claim. However, all of these entries are mixed and describe additional duties performed in the course of the litigation.[55] In the case of mixed billing entries, Anderson has voluntarily reduced the corresponding charges by fifty-percent.[56] Defendants propose that the same discount factor be applied to the identified section 502(c) charges, which results in a reduction of $4,613.25.[57] I find defendants' suggestion

---

[54] *See id.* at 3-4.

[55] *See, e.g.*, 12/20/04 entry by J. Judish for 1.10 hours; 1/6/05 entry by C. Kearns for 1.50 hours; 1/6/05 entry by J. Judish for 4.40 hours; 1/7/05 entry by C. Kearns for 5.00 hours; 2/10/05 entry by J. Judish for 2.40 hours; 2/22/05 entry by J. Judish for 2.70 hours; 3/29/05 entry by J. Judish for 5.50 hours. Ex. A to the Judish Supp. Decl.

[56] *See* Judish Supp. Decl. ¶ 4 ("Time entries for which only a portion of the time was excluded have been partially redacted to omit the description of activity for which no fees are sought. In addition, those entries have been marked by an asterisk (*), and the fees for those entries have been discounted by 50%."). Fees corresponding to such entries will be referred to as "mixed-entry charges."

[57] *See* Surreply at 4.

15

to be reasonable and will therefore reduce the fee award by this amount.

Similarly, defendants found 12.90 additional hours of work related, in part, to

Anderson's expert witness, James F. Reda, whose report I found to be

inadmissible.[58] Applying a fifty percent discount results in a reduction of

$2,323.50 to Anderson's claimed fee award.[59] Defendants also found 10.50

hours[60] of travel time which they claim should be discounted by fifty percent.[61]

This reduces Anderson's fees by $1,968.75.[62]

---

[58] *See, e.g.,* 3/25/05 entry by C. Kearns for 4.00 hours; 4/1/05 entry by C. Kearns for 1.20 hours; 4/1/05 entry by J. Judish for 3.40 hours. Ex. A to the Judish Supp. Decl.

[59] *See* Surreply at 4.

[60] *See* 6/8/05 entry by J. Judish for 3.90 hours; 6/9/05 entry by J. Judish for 6.6 hours. Ex. A to the Judish Supp. Decl.

[61] *See In re Painewebber Ltd. P'ships Litig.,* No. 94 Civ. 8547, 2003 WL 21787410, at *4 (S.D.N.Y. Aug. 4, 2003) ("[W]hen determining attorneys' fees, courts in the Southern District of New York generally do not credit travel time at the attorney's full hourly rate and customarily reduce the amount awarded for travel to at least 50% of that rate.").

[62] *See* Surreply at 7. Defendants also seek a five-percent reduction in fees to account for travel charges not billed by counsel. *See id.* ("The lists of disbursements billed to Anderson contain significant charges for travel expenses, but these charges do not appear to correspond to any specific billing entry. Because the billing records are unclear as to whether Anderson was billed for additional time, the Court should further reduce Anderson's fee claim by 5%."). Because I decline to speculate as to whether the charges included in the category "Travel and Local Transportation" have corresponding time charges not documented in counsel's detailed billing records, this suggestion is rejected.

16

Defendants also make several general objections to plaintiff's fee request. For example, defendants point out that attorneys and paralegals worked on plaintiff's case in addition to Christine Kearns and Julia Judish.[63] Plaintiff has not, however, submitted any information regarding the professional experience of these other individuals.[64] But it is apparent from the work descriptions recorded on the time sheets that A.E. Langford and A.M. Delja are attorneys and that L. Moshkelgosha is a paralegal.[65] Courts in this district have approved of rates ranging from $200 to $225 per hour for junior attorneys and $75 to $115 per hour for paralegals.[66] Given the lack of background information for these individuals, I

---

[63] *See* Exs. B and C to the Judish Supp. Decl. (annexing biographies of Judish and Kearns).

[64] The individuals in issue are A.E. Langford who billed 1.80 hours at $205 per hour, A.M. Delja who billed 77.05 hours at $240 per hour, and L. Moshkelgosha who billed 15.60 hours at $160 per hour. *See* Surreply at 7, n.11.

[65] *See* 11/23/04 entry by A. E. Langford for 1.80 hours ("Research availability of prejudgment interest as 'other equitable relief' in ERISA cases in Second Circuit and Southern District of New York."); 1/5/05 entry by A.M. Delja for 4.00 hours ("Draft document requests for six parties and non-parties; draft interrogatories for three parties; research standard of review; research fiduciary exception to attorney-client privilege."); 1/30/06 entry by L. Moshkelgosha for 6.50 hours ("Assist J. Judish with bates labeling, duplication and organization of exhibits for summary judgment brief for delivery to NY office; emails and discussions regarding same."). Ex. A to the Judish Supp. Decl.

[66] *See, e.g., Nike, Inc. v. Top Brand Co.*, No. 00 Civ. 8179, 2006 WL 452023, at *2 (S.D.N.Y. Feb. 24, 2006).

17

will award a fee at the low end of the range. Accordingly, Langford and Delja's fee will be $200 per hour and Moshkelgosha's rate will be $80 per hour. These adjustments results in a reduction of $4,339 in fees.[67]

Defendants further argue that Anderson is not entitled to fees for work related to his unsuccessful motion requesting the application of a *de novo* standard of review.[68] Plaintiff has not, however, excluded such fees on the theory that the briefing on the standard of review motion contributed to the favorable summary judgment ruling on his severance claim.[69] I agree with defendants that these fees should be excluded. Accordingly, the fee award will be reduced by $13,462.50 in charges related solely to the *de novo* review motion and by $6,123.75 in mixed-entry charges.[70]

Defendants make two additional arguments that must be rejected. *First*, defendants seek an across-the-board twenty-five percent reduction in fees on the basis that "counsel's billing records do not distinguish between time related to

---

[67] This figure is arrived at as follows:

[ ($205 - $200) x 1.80]  + [($240 - $200) x 77.05] + [($160 - $80) x 15.60]
    Langford Adj.         Delja Adj.         Moshkelgosha Adj.

[68] *See* Surreply at 5.

[69] *See* Reply at 1, n.1.

[70] *See* Surreply at 5.

18

Anderson's ERISA claims and time related to his bonus claims."[71] However, Julia Judish, plaintiff's attorney and an officer of the Court, has twice stated under penalties of perjury that the fees associated with Anderson's bonus claim have been excluded from the requested fee award.[72] I do not question the veracity of her statements and therefore decline to reduce the fee award by twenty-five percent. *Second,* defendants seek a $13,363.54 reduction in costs on the theory that any judicially-determined reduction in the amount of fees awarded to plaintiff should trigger a corresponding reduction in the amount of costs to be awarded.[73] This argument is illogical because there is no direct correlation between fees and costs. Costs represent the expenses incurred as part of the litigation. The fact that

---

[71] *Id.* at 2 ("Instead, the records refer to broad topics, including time billed for 'discovery' and preparation of Anderson's 'summary judgment motion' and associated papers.") (footnote omitted).

[72] *See* Judish Decl. ¶ 3 ("Excluding those matters and limiting the fees only to those related to Mr. Anderson's ERISA claims in this action (Counts I-II) reduces the attorneys' fees by $83,231.50, leaving $292,037.00 in recoverable fees."); Judish Supp. Decl. ¶ 3 ("Excluding those matters and limiting the fees only to those related to Mr. Anderson's ERISA claims in this action (Counts I-II), and further excluding fees related to Mr. Anderson's fee application, reduces the attorneys' fees by $87,837.00, leaving $299,134.00 in recoverable fees.") (emphasis in original).

[73] *See* Surreply at 8 ("To the extent that the Court further reduces Anderson's fee claim, the Court should apply a comparable deduction to Anderson's claim for costs and disbursements.").

19

fees may be reduced does not mean that a proportionate share of costs somehow disappear. Furthermore, plaintiff has already deducted from his cost request those disbursements associated with his expert witness and then discounted all remaining disbursements by ten percent to account for unrecoverable costs.[74] This is more than sufficient to ensure that plaintiff's counsel is not overcompensated with regard to costs.

In sum, the following deductions are made from the requested fee amount of $299,134.00: (1) $4,613.25 for plaintiff's bonus claim; (2) $2,323.50 related to plaintiff's expert; (3) $1,968.75 travel adjustment; (4) $4,339.00 hourly rate adjustment; and (5) $13,462.50 and $6,123.75 in fees related to the standard of review motion. The attorney's fees award is therefore $266,303.25.

## IV. CONCLUSION

For the reasons stated above, Anderson's motion for reconsideration seeking prejudgment interest is granted. Defendants shall compute the amount of interest in accordance with the principles contained in this Opinion. If plaintiff agrees with the calculation, that figure shall be included in the final judgment. Furthermore, plaintiff is awarded $266,303.25 in attorney's fees and $29,123.14 in costs. These amounts shall be paid directly to plaintiff's law firm, Pillsbury

---

[74] *See* Judish Supp. Decl. ¶ 5.

Winthrop Shaw Pittman LLP. Finally, plaintiff's Bill of Costs in the amount of $2,950.61 is approved. The Clerk of the Court is directed to close plaintiff's motion for attorney's fees and costs (Document # 62), his motion for a Bill of Costs (Document # 64), and his motion for reconsideration (Document # 65).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           September 11, 2006

21